UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20877-CIV-DUBÉ

**CONSENT CASE**

ROSA DANIEL,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

      Defendant.

_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #22) and the Motion for Summary Judgment filed by the Defendant (D.E. #25) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Ursula Ungaro, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Rosa Daniel (hereinafter "Daniel" or "Plaintiff").

## I. FACTS

Daniel filed an application for disability insurance benefits on June 13, 2001 with an alleged disability onset date of September 14, 2000. (R. 142-144).[2] The application was denied initially and on reconsideration. (R. 32-35, 76-78, 83-85). Following a hearing on December 7, 2004 before ALJ

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Dugan (R. 879-900), the ALJ issued a determination on March 29, 2005, denying benefits. (R. 36-52).  On February 24, 2006, the Appeals Council remanded the case to the ALJ with specific instructions. (R. 53-56).

A second hearing was held before ALJ Torres on December 6, 2006 (R. 901-950) and ALJ Torres issued a disability determination on April 9, 2007, denying benefits. (R. 57-72).  The Appeals Council issued a second remand order following the ALJ's determination. (R. 73-75).  A third hearing was held before ALJ Torres on September 10, 2008. (R. 951-972), after which time a third disability determination was rendered on December 2, 2008, denying the Plaintiff's benefits. (R. 16-31).  Thereafter, a request for review filed with the Appeals Council was denied. (R. 9B-13).

On February 17, 2011, this Court entered final judgment in favor of the Plaintiff and remanding the case to the ALJ for further proceedings. (R. 1005-1025).  The case was subsequently remanded from the Appeals Council (R. 1026-1028) and on August 8, 2011, a fourth hearing was held before ALJ Maher. (R. 1064-1101).  On October 31, 2011, the ALJ issued a determination denying benefits. (R. 981-1004).[3]

The Plaintiff testified before ALJ Maher on August 8, 2011.  Council for the Plaintiff stated Daniel was born on August 25, 1951 and her original onset date was September 14, 2000 with a date last insured of December 2005. (R. 1067).  The Plaintiff asserted she attended school through the eighth grade and did not have a GED.  The Plaintiff stated that although she had a driver's license, she did not drive because of an impairment with her right arm. (R. 1075).  When in need of transportation, Daniel stated her sister drove her, or prior to 2006, her husband drove her. (R. 1076).

Daniel testified she had been involved in a work-related accident in September 2000, and had

---

[3] Although an order by the Appeals Council addressing the ALJ's October 31, 2011 is not contained in the record, the Defendant conceded that the Plaintiff exhausted all of her administrative remedies. (D.E.#25, p. 3).

fallen and broken her wrist while working for the Miami-Dade County School Board as a bus driver. (R. 1076-1077). After the accident, the Plaintiff stated she did not attempt to go back to work. (R. 1077). The Plaintiff testified she had received workers' compensation benefits for one year. (R. 1078).

According to the Plaintiff, Dr. Redondo[4] performed the surgery on her wrist and subsequent physical therapy was provided through his office for her "wrists" for 6 or 7 months. Prior to 2006, Daniel stated she was unable to do anything with her right hand and right arm because anything that she would pick up would break due to her lack of ability to grasp an object. (R. 1078). The Plaintiff gave the example that she was able to pick up a fork or a spoon, but she could not hold the utensil to eat food and had to eat with her left hand. (R. 1079).

In addition to her wrist pain, the Plaintiff asserted she had pain that traveled from her shoulder through the right side into her right arm. (R. 1079-1080). Daniel stated that in her opinion the pain was attributable to the surgical operation and her previously broken wrist. (R. 1080). The Plaintiff further stated she was limited by lower back pain due to a herniated disc. (R. 1080-1081). The Plaintiff testified she had been diagnosed with diabetes a year prior to the hearing and was diagnosed with high blood pressure in 2008. (R. 1081).

In 2000, the Plaintiff asserted she had been hospitalized for 3 weeks at Jackson Mental Health hospital. Daniel testified she had been admitted because she was hearing voices, was depressed and was crying often. (R. 1082). Although she was under psychiatric treatment when she was admitted to Jackson Mental Health hospital, she did not know the name of her treating psychiatrist or psychologist, could not remember the name of the health center, but could remember the address of the facility. Additionally, the Plaintiff was unable to state the names of the medication

---

[4]Incorrectly spelled throughout the transcript as "Radondo."

she had been prescribed. (R. 1083).

Prior to 2006, Daniel testified she was living with her husband in an apartment and her husband had not been working because he had retired.  During that period of time, Daniel asserted she cried often, felt depressed, had suicidal thoughts and heard voices.  The Plaintiff maintained she continued to hear voices, further stating that they told her to kill herself and she had heard voices the night before the hearing. (R. 1084).

The Plaintiff testified she was no longer receiving psychiatric treatment and the last time she had received treatment was a year prior to the hearing.  During 2006, the Plaintiff described a typical day as crying often, depressed and spent time "walking the floor."  The Plaintiff testified her husband bathed and dressed her, and she was not able to accomplish such tasks because she was depressed and heard voices. (R. 1085).

Additionally, the Plaintiff testified her husband performed all of the household chores including cooking and cleaning prior to 2006. (R. 1085).  The Plaintiff stated the reason she could not complete any of the household chores was because she was depressed and heard voices.  The Plaintiff testified she had suicidal thoughts and could not be around people, further stating that she would get upset in a crowd of people. (R. 1086).

Physically, the Plaintiff testified her right arm made it difficult for her to cook or clean because she could not hold anything in her right hand as the pain would travel from her hand into her shoulder. (R. 1086).  Daniel testified after surgery she began to feel pain in her shoulder. (R. 1086-1087).  According to Daniel, she also had surgery on her finger 3 times on her right index finger.  The Plaintiff testified she had surgery on her finger due to diabetes, and she took medications for her diabetes, high blood pressure and pain medication.  At the time of the hearing the Plaintiff asserted that she had an infection in her finger and she had a follow-up appointment later in the

4

month. (R. 1087).

During 2006, the Plaintiff stated she had difficult walking and standing and at the time she could walk a distance of half a block because she was encumbered by back pain.  Further, the Plaintiff asserted she was only able to stand for "a couple of seconds."  Additionally, during 2006, the Plaintiff stated her husband would go to the grocery store, and prior to 2006 her adult son had lived with her.  The Plaintiff testified her son had also assisted her with the help of the daily activities such as cooking and providing her with water. (R. 1088).

Daniel testified she had been a bus driver for 10 years and prior to becoming a bus driver, she had been a custodian for 6 years for Miami-Dade County School Board. (R. 1088-1089).  During 2006, the Plaintiff stated she had noticed changes in her memory such as failing to remember the question or failing to remember what to say in response to the question. (R. 1089).  Additionally, the Plaintiff testified that during 2006 she had difficulty remembering prior events and was not able to engage in activities of daily living. (R. 1090).

The Plaintiff asserted during 2006 she heard voices every night until the morning and she no longer was treated by psychiatrists because she did not have insurance and did not have public assistance to see a psychiatrist. (R. 1090).  Daniel described her work as a custodian stating that she carried a bucket weighing 50 pounds, moved chairs, cleaned rooms, mopped floors, swept, and took out the garbage. (R. 1090-1091).

During 2006, the Plaintiff stated she had not been able to hold a pen or write with her right hand and further asserted that after her surgery, she continued to be unable to write with her right hand.  Daniel claimed she used her left hand to write, brush her teeth, brush her hair and bathe. (R. 1091).  Daniel testified at the time of the hearing she was not residing with her husband.  The Plaintiff stated she had been treated by Dr. Barton at Bayview or Locktown, but did not have

sufficient funds to continue treatment. Previously, the Plaintiff noted she had used her husband's retirement income for psychiatric treatment and at the time of the hearing, received $300.00. (R. 1092).

After the testimony of the Plaintiff, Mr. Fidanza testified as a vocational expert (hereinafter "Fidanza" or "VE"). Fidanza stated that his testimony was going to be consistent with the Dictionary of Occupational Titles including its companion publication Selected Characteristics of Occupations. (R. 1093). The VE described the Plaintiff's past relevant work as a school bus driver, DOT 913.463-010, medium, SVP 4; a school bus monitor, DOT 372.667-042, light, SVP 3; and a commercial cleaner, DOT 381.786-014, heavy, SVP 2. (R. 1093-1094). The VE was asked to assume the following hypothetical:

> ... assume that the hypothetical individual was age 49 and upon the expiration of the date last insured I want you to assume that the hypothetical individual was approximately 54 ½,
>
> ...
>
> In addition to making those assumptions could you further assume that the hypothetical person shares the claimant's education and work history and that this person has the residual functional capacity to perform  partial range of light work, specifically assume that this individual can sit for up to six hours total in an eight hour work day and can stand and walk for up to six hours total in an eight hour work day. With the left arm the individual can lift, carry, push and/or pull up to ten pounds frequently and up to twenty pounds occasionally. With the right arm the individual can occasionally lift and carry up to ten pounds. With the right arm the individual can frequently reach from waist to chest but only occasionally reach above the shoulder. With the right hand and fingers the individual can occasionally handle and occasionally finger. The individual cannot climb ladders, ropes or scaffolds. The individual can occasionally stoop, kneel, crouch and/or crawl. The individual is limited to the basic demands of unskilled work in that this individual can understand, remember and carry out short and simple instructions, respond appropriately to supervision, interact appropriately to co-workers and respond

> appropriately to changes in routine work settings. Finally, the
> individual is limited to occupations in which the principle measure of
> performance is not based on production quotas or production goals.
>
> ...
>
> Could such a hypothetical individual perform any of the claimant's
> past work?

(R. 1094-1095).

The VE testified that the Plaintiff could not perform any of her past relevant work, however, there was work in existence in the national economy that the Plaintiff could perform. (R. 1095-1096). The VE asserted the work included the following positions: a furniture rental clerk, DOT 295.357-018, light, SVP 2 (250 jobs locally; 1,000 jobs statewide; and 25,000 jobs nationally); and an usher, DOT 344.677-014, light, SVP 2 (250 jobs locally; 1,000 jobs statewide; and 60,000 jobs nationally). The VE testified the numbers stated were only representative of the numbers of jobs available. Fidanza further testified bimanual dexterity was only required on an occasional basis for the aforementioned positions. Fidanza opined that the positions would not require lifting weight in excess of 10 pounds because they were categorized as light work. (R. 1096).

The ALJ asked the VE a second hypothetical following the same parameters of the first hypothetical but with an additional variable: the claimant could be expected to miss in excess of one day a month due to physical pain or emotional symptoms. The VE testified that based upon the second hypothetical, there would be work that would be available if the claimant was only missing 1 day a month, which is considered the normal average. However, if the hypothetical claimant missed more than 1 day, the hypothetical claimant would be unable to sustain competitive employment. (R. 1096).

Counsel for the Plaintiff asked Fidanza to assume a hypothetical question with the parameters

of the ALJ's first hypothetical.  Fidanza was asked to include an additional limitation of no use of the right arm for lifting or reaching.  The VE testified that within the constraints of the hypothetical question, there would be no work within the national economy that the hypothetical claimant could perform.  The VE also testified that the <u>Selected Characteristics of Occupations</u> would say that bilateral manual dexterity is required to some extent in the jobs that were previously mentioned, and thus, there would not be any available work for the hypothetical claimant. (R. 1097).

The VE was asked whether a hypothetical claimant who had frequent difficulty (defined as 2/3 of a workday) dealing with the public or supervisors would be able to find work within the national economy. (R. 1098).  The VE testified no jobs would be available to the hypothetical claimant.  If, however, the hypothetical claimant only had difficult dealing with the public on an occasional basis (defined as 1/3 of the workday), then the VE opined that there would be work that the hypothetical claimant could perform, such as the position as an usher. (R. 1099).  The VE further stated that the position as an usher, as it was performed within the United States, would require an individual to interact with the public. (R. 1100).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ.  However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail.  Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: chronic back pain, chronic headaches, status-post fracture of the right wrist, status-post cerebral vascular accident, obesity and depression.  The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a

listing. (R. 987). The ALJ determined that through the date last insured, the Plaintiff had the residual functional capacity to perform a partial range of light work. (R. 992). The ALJ also determined through the date last insured, the Plaintiff was unable to perform any past relevant work but considering the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed (R. 1001-1102). Therefore, the ALJ found the Plaintiff was not under a disability from the alleged onset date of September 14, 2000 through the date last insured, December 7, 2004. (R. 1003).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must

affirm if the decision is supported by substantial evidence. <u>See</u>, <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. <u>See</u>, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. <u>See</u>, <u>Gibson v. Heckler</u>, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits

10

are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ failed to properly assess the opinion evidence of record. Specifically, the Plaintiff contends the ALJ did not state with particularity the weight assigned to Drs. Redondo, Hudec, Sinnreich, Barton, Piniella, and Alexis. The Defendant argues the ALJ properly took into account the opinions of the physicians and properly evaluated the medical opinion evidence.

Although the Plaintiff's initial argument addressed the opinions of many physicians, the Plaintiff's initial contention centers upon the opinion of Dr. Jacqueline Redondo, M.D. The Plaintiff argues that in considering the medical opinion evidence of Dr. Redondo, the ALJ cited to only one specific piece of medical evidence from August 9, 2001, and gave it persuasive weight. The Plaintiff contends the ALJ failed to state why the opinion of Dr. Redondo was given less than controlling weight and further argues that the ALJ did not address the entirety of Dr. Redondo's medical opinion.

The Defendant argues that the ALJ extensively discussed Dr. Redondo's August 9, 2001,

opinion, but further argues that subsequent medical evidence from Dr. Redondo completed in April 2002 is supportive of the ALJ's decision that found Dr. Redondo's August 9, 2001 opinion to be persuasive and not entitled to controlling weight.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

The Eleventh Circuit has found no reversible error where "limited review precludes re-weighing the evidence anew, and '[where] the ALJ articulated specific reasons for failing to give [the treating physician's] opinion controlling weight' and these findings are supported by substantial evidence." Petteway v. Comm'r of Soc. Sec., 353 Fed.Appx. 287, 290 (11th Cir.2009)(unpublished) (citation and internal quotations omitted). Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir.2005).

Further, the Program Operations Manual ("POMS"), DI 24515.003 provides general guidance regarding the weight accorded to treating source medical opinions.[5] The POMS manual states in pertinent part, "[g]ive controlling weight to a treating source's medical opinion regarding the nature

_____

[5] In the unpublished case of Wells v. Comm'r of Soc. Sec 430 F. App'x. 785, 786 (11th Cir.2011), the Eleventh Circuit held that the POMS manual did not have the full force of law.

and severity of the claimant's impairment(s) if [] [t]he opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and [i]t is not inconsistent with the other substantial medical or nonmedical evidence in the claimant's case record."

From a review of the ALJ's determination and the corresponding record at issue, it is apparent that the ALJ throughly reviewed Dr. Redondo's opinion, however, what is not clear to the Court is what weight the ALJ assigned to the opinion of Dr. Redondo.  The ALJ's analysis of Dr. Redondo's opinion discussed the physician's medical records from December 2000 through April 2002 and included follow-up assessments, a work status assessment and a workers' compensation form requested by the Florida Department of Labor. (R. 993-997).  Despite such a thorough review of Dr. Redondo's medical records, when the ALJ analyzed the treating physician's medical opinion, he referenced only one medical record from August 9, 2001, and found that particular piece of medical evidence to be "persuasive." (R. 1001).

"Without a clear explanation of how the ALJ treated those opinions, we cannot determine whether the ALJ's conclusions were rational or supported by substantial evidence." Lawton v. Comm'r of Soc. Sec., 431 Fed.Appx. 830, 834 (11th Cir.2011)(unpublished)(citation omitted).  The Defendant argues that additional evidence from Dr. Redondo explains why the ALJ found the opinion persuasive and not controlling weight, however, such an argument makes a leap in judgment about an analysis of Dr. Redondo's opinion by the ALJ that is not present in the determination. Moreover, if one were to assume that the ALJ limited the weight accorded to Dr. Redondo, there is no analysis of whether the opinion in its entirety was accorded less than controlling weight or whether such a distinction applied to one piece of medical evidence.

Because the ALJ did not give Dr. Redondo's opinion controlling weight, nor did he provide any good cause analysis detailing why the treating physician's opinion was not entitled to such

weight, the Court finds that remand is warranted.  On remand, the ALJ must determine whether the entirety of Dr. Redondo's opinion is entitled to controlling weight or whether good cause is present to limit the weight accorded to the opinion of the treating physician.

The Court finds there is insufficient reasoning for determining whether the ALJ's decision is based upon substantial evidence and remand is warranted. See, Hanna v. Astrue, 395 Fed.App'x 634, 636 (11th Cir.2010)(citation omitted)(holding the "ALJ must state the grounds for his decision with clarity to enable [the courts] to conduct a meaningful review.").  Although remand is required, a finding of disability is not appropriate at this time.  Because remand is required on the above grounds, the other issues raised by the Plaintiff, specifically a determination of the weight accorded to the opinions of Drs. Hudec, Sinnreich, Barton, Piniella, and Alexis, as well as additional issues, need not be addressed. See, Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir.1986).

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court finds that the decision issued by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied.  Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)     The Motion for Summary Judgment filed by the Plaintiff (D.E. # 22) is **GRANTED in part**.

(2)     The Motion for Summary Judgment filed by the Defendant (D.E. #25) is **DENIED**.

(3)     The decision of the Commissioner is **REVERSED AND REMANDED**.

**DONE AND ORDERED** this ____11____ day of March, 2013.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

14